UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:09-cv-00590 (TSE/IDD) |
| ) | |
| BOUGIE, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to the November 10, 2009 Order from the Honorable T.S. Ellis III (Dkt. No. 8) and Plaintiff's Motion for Default Judgment against Bougie, Inc., trading as KC's Restaurant ("Defendant") (Dkt. No. 12). After a representative of Defendant failed to appear at the December 18, 2009 hearing, the undersigned Magistrate Judge took this matter under advisement. Upon consideration of the Complaint, Plaintiff's Motion for Default Judgment, and the supporting affidavits, the undersigned Magistrate Judge recommends that default judgment be entered against Defendant, Bougie Inc., a Virginia Corporation trading as KC's Restaurant.

## I. INTRODUCTION

Joe Hand Promotions, Inc. ("Plaintiff") filed a Complaint against Defendants, Bougie, Inc., t/a KC's Restaurant and KC's Restaurant on May 26, 2009. The Complaint alleges violations of Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. (Compl. ¶ 1.) 47 U.S.C. § 553 grants relief for unauthorized reception of cable services, while 47 U.S.C. § 605 affords a remedy for unauthorized

1

publication or use of communications[1]. 47 U.S.C. § 553(a)(1); 47 U.S.C. § 605(a). Plaintiff's allegations are based on the aforementioned statutes and Defendant's unlawful interception, reception, and exhibition of a closed-circuit telecast on May 26, 2007 of the Ultimate Fighting Championship 71: Chuck Liddell v. Quinton Jackson. (Compl. ¶ 7.) Plaintiff was an exclusive commercial distributor of that telecast. (Compl. ¶¶ 9, 10.) Thus, Plaintiff has moved for default judgment and requests the Court to award Plaintiff statutory damages, willfulness damages, and litigation costs and attorney's fees. (Pl.'s Mem. Supp. Mot. Default J. at 4.)

## A. Jurisdiction and Venue

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because this case arises under Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. (Compl. ¶¶ 1, 2.)

The Court also has personal jurisdiction over Defendant, Bougie Inc., t/a KC's Restaurant, because Defendant is incorporated in the Commonwealth of Virginia with its principal place of business at 9550 Center Street, Manassas, Virginia, 20110. (Compl. ¶¶ 5-6; Pl.'s Mem. Supp. Default J. at 1.) Venue in this District is proper under 28 U.S.C. § 1391 in that the claims which are the subject of this action occurred in this District.

---

[1] Plaintiff admitted during the hearing for default judgment on December 18, 2009 that it is only seeking damages for Defendant's violation of 47 U.S.C. § 605. Therefore, the Court need not address the question of whether Plaintiff's claim based on 47 U.S.C. § 553 has merit, or whether the Complaint sufficiently states a claim for violation of that section.

### B. Service of Process

Under Fed. R. Civ. P. 4(h), service upon a corporation, partnership or other unincorporated association shall be effectuated "in the manner prescribed for individuals by subdivision (e)(1) of that rule, or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process..." Subdivision (e)(1) provides that service may be achieved "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State..." Thus, service is proper if it is executed according to Virginia law.

In Virginia, process may be served upon a domestic corporation either by "personal service on any officer, director, or registered agent of such corporation," or by "substituted service on stock corporations in accordance with Va. Code Ann. § 13.1-637." Va. Code Ann. § 8.01-299. Va. Code Ann. § 13.1-637(B) provides for substituted service on the clerk of the State Corporation Commission whenever "a corporation fails to appoint or maintain a registered agent in this Commonwealth, or whenever its registered agent cannot with reasonable diligence be found at the registered office."

Plaintiff, with reasonable diligence, attempted to serve the Complaint and Summons on Defendant by private process server on five separate occasions (September 11, 16, 17, 18, and 19, 2009), by serving Defendant's Registered Agent, Mr. Charles Oudeh, at his address on record with the State Corporation Commission.[1] (Pl.'s Mem. Supp. Default J. at 1.) Each time, Mr. Oudeh's employees indicated that he would be

---

[1] The Virginia State Corporation Commission's website reveals that Mr. Charles Oudeh is Bougie, Inc.'s Registered Agent in the Commonwealth of Virginia. (Dkt. No. 12-4.)

3

present in the restaurant. However, Mr. Oudeh was never present or available when the server reached the restaurant. (Pl.'s Mem. Supp. Default J. at 2.) In fact, on one occasion on September 18, 2009, the private process server personally spoke with Mr. Oudeh, who informed the server that he would call the server upon his arrival at the restaurant. (Dkt. No. 4 Gail Timbers Affidavit.) Despite these assurances, Mr. Oudeh did not contact the server. (Timbers Aff. at 4.)

Because Mr. Oudeh, the Registered Agent for Defendant, was unavailable for personal service, Plaintiff's private process server served the Clerk of the State Corporation Commission on September 22, 2009, pursuant to Va. Code Ann. §§ 13.1-637(B) and 12.1-19.1. (Pl.'s Mem. Supp. Default J. at 2.) The Plaintiff filed an Affidavit of Service with this Court on September 25, 2009, in conjunction with service on the State Corporation Commission. (Dkt. No. 6 D.M. Hester Affidavit.)

Finally, pursuant to Va. Code Ann. §§ 12.1-19.1, the Clerk of the State Corporation Commission mailed a copy of the Complaint to the registered agent at the address on record with the State Corporation Commission. The Clerk of the State Corporation Commission filed a Certificate of Compliance with this Court on September 30, 2009. (Dkt. No. 7 Certificate of Compliance.) Based on the proof of service filed with this Court, along with the server's prior communications with Defendant's Registered Agent, and the State Corporation Commission's Certificate of Compliance, the Court finds that Defendant was properly served by substituted service.

### C. Grounds for Entry of Default

The Complaint was filed on May 26, 2009. Defendant has failed to appear, answer, or file other responsive pleadings in this matter. On December 03, 2009,

4

Plaintiff filed a Request for Entry of Default with the Clerk. (Dkt. No. 10.) The Clerk entered Default on that same day. (Dkt. No. 11.) On December 04, 2009, Plaintiff filed a Motion for Default Judgment, and a hearing was conducted on December 18, 2009. (Dkt. No. 12). When no representative for the Defendant appeared at the December 18, 2009 hearing, the undersigned Magistrate Judge took the Motion under advisement to issue this Report and Recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings[2], the undersigned Magistrate Judge finds that the Plaintiff has established the following facts.

Plaintiff is a corporation organized under the laws of Pennsylvania, with its principal place of business in Pennsylvania. (Compl. ¶ 4.) Plaintiff is a closed-circuit distributor of sports and entertainment programming and paid substantial fees to enter into a closed-circuit television license agreement (the "License Agreement") to exhibit the closed-circuit telecast of the May 26, 2007, Ultimate Fighting Championship 71: Chuck Liddell v. Quinton Jackson. (Compl. ¶ 7; Pl.'s Aff. ¶ 3.) Through its License Agreement, Plaintiff acquired the right to distribute preliminary events, the main boxing match itself, and all related events (collectively referred to as the "Event"), including under card bouts, in Virginia. (Compl. ¶¶ 7-8; Pl.'s Aff. ¶ 7.)

Therefore, any business in Virginia seeking to show the Event was required to pay Plaintiff for the rights to broadcast the Event. The transmission of the Event was electronically coded and had to be decoded with electronic equipment in order for a

---

[2] The pleadings include the Complaint (Dkt. No. 1), Plaintiff's Motion for Default Judgment (Dkt. No. 12.), Plaintiff's Memorandum in Support of Default Judgment (Dkt. No.12-2), and the affidavits in support thereof (Hester Aff.; Timbers Aff.; Pl.'s Aff.).

proper signal to be received and televised by the establishment. (Compl. ¶ 11.) This capability to decipher the code and/or receive appropriate satellite coordinates for televising the Event was available for purchase once an establishment contracted with Plaintiff. (Compl. ¶¶ 11, 12.)

On May 26, 2007, during the broadcast of the Event, Ms. Shenae Outerbridge, an investigator working for the United States Investigator Bureau (retained by Plaintiff) entered Defendant's establishment. Ms. Outerbridge noticed that Defendant's establishment was exhibiting the match without Plaintiff's permission. (Dkt. No. 15, Shenae Outerbridge Affidavit.) Ms. Outerbridge counted the number of people in the establishment and submitted an affidavit based on her findings. (Outerbridge Aff.) Based upon her investigation, Ms. Outerbridge concluded that the Defendant intercepted and/or received the interstate communication of the Event, and enabled patrons to view the Event, without a license or approval from Plaintiff. (Compl. ¶¶ 14, 17.) Therefore, Plaintiff claims that the Defendant avoided lawful payment to its company by misappropriating Plaintiff's licensed exhibition of the Event whilst infringing upon Plaintiff's exclusive rights. (Compl. ¶ 15.)

### III. <u>EVALUATION OF PLAINTIFF'S COMPLAINT</u>

Plaintiff alleges that this case concerns the pilfering and re-transmission of a pay-per-view event. (Pl.'s Mem. Supp. Default J. at 2.) Defendant purportedly intercepted, received, published, divulged, displayed, and/or exhibited the Event for purposes of direct or indirect commercial advantage, in violation of Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. Thus, Plaintiff

moves this Court to enter an Order of Default Judgment[3] against Defendant as well as award the following amount in damages: $10,000 in statutory damages, $15,000 in increased statutory damages due to willfulness, and reasonable attorneys' fees and costs in the amount of $4,047.58.[4]

A defendant in default admits the factual allegations in the complaint. Fed R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts alleged state a claim.") Although Plaintiff claims liability under both 47 U.S.C. §§ 553 and 605, Plaintiff has explicitly elected to recover only under § 605(a). Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge analyzes Plaintiff's claims in accordance with Fed R. Civ. P.12(b)(6) to ensure that the Complaint properly states a claim and determines the damages recoverable only under 47 U.S.C. § 605(a).

In this regard, the Complaint contends that broadcasting of the Event constitutes signal piracy in violation of 47 U.S.C. § 605. (Compl. ¶¶ 20-30.) Section 605 was enacted as part of the Cable Communications Policy Act of 1984, which amended the Communication Act of 1934. 47 U.S.C. § 605 provides in relevant part:

---

[3] On November 10, 2009, the Honorable T.S. Ellis III found that Defendant, Bougie, Inc., a Virginia Corporation trading as KC's Restaurant, was in default. (Dkt. No. 8.)

[4] *See* Compl. ¶ 25 (requesting statutory damages in the amount of $10,000, increased statutory damages for willfulness in the amount of $50,000, and full costs and expenses of this action, including reasonable attorney's fees); *but see* Mot. Hrg. On December 18, 2009 (informing the Court that Plaintiff decided to proceed only under 47 U.S.C. § 603 for its damages claims and thus amended its request to $10,000 in statutory damages and decreased statutory damages due to willfulness to $15,000).

...No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge, or publish the existence, contents, substance, purport, effect, or meaning so such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto...47 U.S.C. § 605(a).

Plaintiff pleads in its Complaint that it obtained an exclusive license agreement to exhibit closed-circuit telecasts of ultimate fighting championships in the Commonwealth of Virginia. (Compl. ¶ 7; Pl.'s Affidavit ¶ 3.) As a result, Plaintiff paid substantial fees to acquire rights to distribute closed-circuit broadcasting for commercial gain. (Compl. ¶ 8.) These closed-circuit broadcasts are not intended for the use of the general public unless an establishment has paid a fee to Plaintiff and received contractual authorization to broadcast the closed-circuit programs. (Compl. ¶ 9.)

With the advent of pay-per-view programming, Plaintiff began to experience serious erosion in the sales of its proprietary programming. (Pl.'s Aff. ¶ 4.) In response to learning that this erosion was a result of rampant piracy, Plaintiff embarked upon a nationwide program to police its signals for the purpose of identifying and prosecuting commercial establishments which pirate its programming. (Pl.'s Aff. ¶ 5.) Specifically, Plaintiff retained auditors and law enforcement personnel to detect and identify signal pirates. (Pl.'s Aff. ¶ 5.) To ensure that only illegal locations were targeted by auditors, Plaintiff compiled a confidential list of authorized and legal customers, who paid the required license fee to broadcast the program. (Pl.'s Aff. ¶ 6.)

Contracting with Plaintiff to broadcast the exclusive events gives establishments the use of a descrambling device which decodes the reception of a pay-per-view broadcast. Plaintiff has shown that such transmissions of events are electronically coded or "scrambled" so that it becomes impossible to exhibit the events without purchase or illegal interception. (Compl. ¶¶ 11-14; Pl.'s Aff. ¶ 9.) In addition to intercepting Plaintiff's signals, the Defendant avoided legal payment to the Plaintiff by misappropriating Plaintiff's licensed exhibition of the Event and infringing upon Plaintiff's exclusive rights to the Event. (Compl. ¶ 15.) Thus, Plaintiff has properly pled that it should be afforded the protections of 47 U.S.C. § 605.

*A. Statutory Damages*

Having accepted the well pleaded allegations of the Complaint as true, Plaintiff is entitled to judgment based on Defendant's violation of 47 U.S.C. § 605. Consequently, 47 U.S.C. § 605(e)(3)(C)(i)(II) permits the aggrieved party to recover "statutory damages for each violation...in a sum of not less than $1,000.00 or more than $10,000.00" In determining the amount of damages that can be imposed for each violation, Section 605 leaves the decision within the sound discretion of the court. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II) (including the language that the aggrieved party may receive damages as the "court considers just").

Plaintiff argues that it is entitled to the maximum statutory damages of $10,000 for Defendant's interception and exhibition of the Event. (Compl. ¶¶ 32-33.) Although the Fourth Circuit has not provided a bright-line rule for evaluating such actions, other courts have generally adopted one of two approaches to calculate statutory damages. In determining the amount of damages to award in such cases, courts have based their

damage calculations on either the number of patrons in an establishment during the illegal broadcast or a flat damage amount. *See Joe Hand Promotions, Inc. v. Collins*, 2007 U.S. Dist. LEXIS 77373 (E.D.N.Y. Sept. 7, 2007) at *7-8 (requiring defendants to pay $50.00 per customer); *see also Joe Hand Promotions, Inc. v. Fofana*, 2007 U.S. Dist. LEXIS 58575 (S.D.N.Y. Mary 30, 2007) at *15-16 (requiring defendants to pay $250.00 per customer in order to deter defendants from engaging in similar acts of cable piracy in the future); *E..g., Top Rank Inc., v. Tacos Mexicanos, et al.*, 2003 WL 21143072 (E.D.N.Y. March 28, 2003) at *4; *Entm't by J&J, Inc. v. Mama Zee Rest. & Catering Servs., Inc.*, 2002 U.S. Dist. LEXIS 13686, 2002 WL 2022522 (E.D.N.Y. May 16, 2002) at *3; *but see Kingvision Pay-Per-View, Ltd., v. Jasper Grocery*, 152 F.Supp. 2d 438, 442 (S.D.N.Y. 2001) (awarding flat sum of $5000).

Here, the Plaintiff has not submitted data showing the amount of any profits the Defendant may have acquired by illegally broadcasting the fight. In fact, Ms. Outerbridge states in her Affidavit that she paid no cover charge to enter the Defendant's establishment. (Outerbridge Aff. at. 1.) The Plaintiff also has not provided the amount of any fees that Defendant charged patrons who viewed the Event. Based upon the lack of information provided by the Plaintiff from which the Court can calculate damages, this Court concludes that the appropriate manner by which to calculate statutory damages is to multiply the number of customers who were present in Defendant's establishment during the broadcast of the Event (approximately ten[5]) by a reasonable rate of $100.00 per customer. Therefore, Defendant should be ordered to pay the statutory minimum of $1,000.00.

---

[5] *See* Outerbridge Aff. at 1 (stating that "At the time of my appearance I counted the number of patrons three (3) separate times. The head counts were 10, 10, 10").

### B. *"Enhanced" Statutory Damages*

47 U.S.C. § 605(e)(3)(C)(ii) provides that where a violation is "committed willfully and for purposes of commercial advantage or private gain," the court may increase the award of damages by an amount of no more than $100,000.00 for each violation. Plaintiff reduced the amount of enhanced damages it requested in its Complaint from $50,000 to $15,000.00. It is beyond question that the § 605(a) violation was committed for purposes of direct or indirect commercial advantage. After all, "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Time Warner Cable v. Googies Luncheonette*, 77 F. Supp. 2d at 485, 490 (S.D.N.Y. 1999). However, in awarding enhanced damages, courts have considered that "although the amount of damages should be an adequate deterrent, [a single] violation is not so serious as to warrant putting the restaurant out of business." *Garden City Boxing Club, Inc. v. Polanco*, No. 05 Civ. 3411, 2006 U.S. Dist. LEXIS 5010, 2006 WL 305458, at *5 (S.D.N.Y. Feb 7, 2006).

The Court finds that the Defendant's actions were done willfully and for direct or indirect commercial advantage. Therefore, Plaintiff is entitled to enhanced damages. (Pl.'s Aff. ¶ 18.) In determining the appropriate amount of enhanced damages in cases involving cable and satellite piracy, other courts have considered factors "such as allegations of: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks." *Kingvision Pay-Per-View v. Rodriguez*, 2003 U.S. Dist. LEXIS 2674 (S.D.N.Y. Feb. 24, 2003) at *2.

Although the size of the Defendant's establishment (approximate maximum capacity of 200 persons) and its location in a major metropolitan city[6] are factors in warranting enhanced damages, Plaintiff has not shown that Defendant specifically promoted its establishment as a venue to broadcast the Event, or that Defendant significantly benefited from the broadcast. Outerbridge's Affidavit notes that she was not subject to a cover charge when she entered Defendant's establishment, and the number of people in attendance was no more than ten, despite an estimated capacity of two-hundred. Since whatever profits Defendant reaped from its misdeeds were likely nominal, an award of $10,000.00 in enhanced damages should be more than sufficient to deter the Defendant from repeating its conduct. Accordingly, the Court finds that an award of $1,000.00 in statutory damages and an additional $10,000.00 in enhanced damages is an appropriate remedy. The total amount both compensates Plaintiff and serves as a deterrent to both the Defendant as well as others intent on pirating contracted for programming in the future.

### C. Attorney's Fees and Costs

47 U.S.C. § 605(e)(3)(B)(iii) allows the prevailing aggrieved party to recover full costs, including reasonable attorney's fees. In support of this request, Plaintiff submitted the Declaration of M. Scott Bucci, Esquire, and a detailed breakdown of attorney's fees for this matter. (Dkt. No. 12-3.) Plaintiff's counsel avers under oath that $4,047.58 is an accurate representation of the attorneys' fees and costs incurred in this proceeding. After having examined and reviewed the Bucci Decl. along with its supporting affidavit (Dkt.

---

[6] KC's Restaurant is located in Manassas, Virginia. Although Manassas, Virginia only boasts a population of over 35,000, the City of Manassas is a part of the larger Washington Metropolitan Area.

Nos.12-3, 16), the undersigned Magistrate Judge finds that the requested costs and fees are reasonable compensation for work necessarily expended to enforce Plaintiff's rights.

## IV. **RECOMMENDATION**

The undersigned Magistrate Judge recommends that the Court grant the Plaintiff's Motion for Default Judgment against Defendant, Bougie, Inc., a Virginia Corporation trading as KC's Restaurant. (Dkt. No.12.) The undersigned further recommends that damages in the total amount of $11,000.00 be fixed as follows: 1) Statutory damages in the sum of $1,000.00 pursuant to 47 U.S.C. § 605(e)(2)(C)(i)(II); and 2) Enhanced damages in the sum of $10,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Lastly, the undersigned advises that Plaintiff be awarded attorneys' fees and costs in the amount of $4,047.58. Thus, the grand total of damages is equal to $15,047.58.

## V. **NOTICE**

**By mailing copies of this report and recommendation, the parties are notified as follows. Objections to this report and recommendation must, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record and Defendant at the following address:

13

Bougie, Inc.
t/a KC's Restaurant
9550 Center Street
Manassas, Virginia 20110

                                            /s/
                                   Ivan D. Davis
                                   United States Magistrate Judge

April 12, 2010
Alexandria, Virginia